We will take the cases in the sequence in which they appear on the docket sheet. Three cases have been submitted on the briefs. The first oral argument will be United States v. Wiberg. Counsel for the appellant. Thank you, Your Honors. Good morning. May it please the Court, my name is Stephen Babcock. I'm with the Federal Defenders of Montana. I represent the appellant in this matter, Jeremiah Wiberg. Wiberg was convicted of one count of receipt and one count of possession of child pornography along with a forfeiture charge. He was sentenced back in July of 2007 and after that he appealed his sentence on a reasonable ground. Since that time, a 28-J letter has been submitted on this case in response to United States v. Davenport. In that case, of course, this Court is well aware of that the Court held that it is constitutionally infirm if the offense conduct is the same for a possession and a receipt charge. That case was remanded back on a double jeopardy clause violation and I believe that directly applies to this case. Your position is that we should remand for further proceedings pursuant to Davenport? It is, yes, Your Honor. I included in my supplemental briefing on this case that I wanted this case to proceed to oral arguments on the reasonable standard. In Davenport, there was also a reasonable argument. In that case, the Court did not get to that. It remanded because of the Fifth Amendment violation. That is exactly what we have in this case, too. I think for judicial economy, of course, it might be apparent to address the reasonableness issue, but I do not have any on-point law that says that is the case. I think the Court can take a look at other cases that have dealt with gun issues that also have found that there is multiplicity violations and the Court has gone on. What is there for the district court to do if we send it back? If it sends it back, it must vacate one of the prior convictions, either the possession or the receipt. That would be done without prejudice, you know, to prevent any collateral taxes directly as held in Davenport. Would it make any difference with respect to the sentence which conviction the Court vacated? I would hope that the Court would vacate the receipt possession because, of course, at that time, pre-Adam Walsh, it was a mandatory minimum of five years on the receipt. It was a maximum statutorily of 10 years on the possession charge. We have 168 here, 168 months, which is over 10 years. Correct. So if the receipt charge was dismissed, then he would face a maximum term of imprisonment of 120 months. What if the possession were the one that is vacated? What would the result be there? The result would be, of course, the Court could certainly sentence the exact same sentence that we have here. It could be a concurrent sentence. Well, in Davenport, it was a concurrent sentence. What happened at that time is that the Court still vacated because of any collateral consequences that could happen on a subsequent conviction. And that is exactly what happened. Do you have a reasonable argument for vacating the lesser charge, possession charge? Given that the district that you've already been, your client has already pled guilty to the greater charge, and the Court has already issued a sentence of 168 months, why would the Court vacate the receipt charge and not the possession charge? I don't think the Court would. I think that what happened in this case is that the possession charge would be vacated. He would then be resentenced on the receipt charge. Of course, the Court may adhere to any type of argument since there was a conviction that was vacated for a lesser sentence. But I certainly do believe that the receipt charge would stand and the possession charge would be vacated. So the net result is there's no change. Is that right? Could be. There's collateral consequences to your client of having been convicted of two charges when he can only be convicted of one. But the net change in the sentence that he would serve is zero, right? Well, certainly if the district court sees it that way on remand. The district court certainly has the power on remand to sentence him to less than 168 months. The Court could take into consideration if there's one less count. There could be arguments for that. But all intents and purposes, he's probably facing the same sentence. But that was certainly the case also in Davenport, and the Court's still remanded. You would still prefer to take your chances with the district court rather than having this Court vacate the possession charge on our own? Certainly, yes. And I think as though that the case must be remanded on that purpose. Weiberg may then have a potential argument on the reasonable standard. But I think this Court has made abundantly clear in Davenport that the Fifth Amendment violation will kick it back down before a reasonable argument can be reached. So, that is all. Thank you, Counsel. You have some reserved time. Thank you. We'll hear from the Governor. Good morning. May it please the Court and Counsel. I'm Marcia Hurd from the U.S. Attorney's Office in Montana. I'm an AUSA, and I handled this case below and wrote the brief. Unfortunately, I also handled the Davenport case, so I'm responsible for that one. Do you have any insight into why there was no petition for rehearing in Banff or cert petition filed in Davenport? I mean, I know that's not literally before us, but I have some curiosity. As you know, that's not a decision that our office can necessarily make. That has to be approved by the Department of Justice, usually in terms of at Washington, D.C. I believe permission was looked at in terms of seeking that, because I was the one who wrote the brief in Davenport, and I still have issues with how that case was decided. I know you were the dissent in Davenport, and obviously had issues with the way that case was decided, and here we are. But for whatever reason, it wasn't permitted to go forward. I think in this case that it's a little bit unusual that the defense and I don't have any big disagreement. Usually I would say that his Davenport argument is waived, because he didn't raise it in his opening brief, but the reality is his opening brief was November 9th of 2007. Davenport was not decided until March 24th of 2008, and so of course at the time, he didn't have the benefit of the Davenport decision. And so I think that- Does he have an obligation to come up with the double jeopardy argument itself? Well, certainly it can be waived. And if you read the transcript, it's really rather interesting. This sentencing was on the same date as the resentencing that Kuczynski case, which was kind of a precursor to Davenport, also one of my rather unfortunate cases, and- Can't win them all, counsel. I know, and the judge actually addressed it in a brief fashion, because the argument that was made in Kuczynski that the government made was exactly what the judge said in this case. It wasn't raised by the defense, but it was kind of raised by the court just to offset that. So I think there is an obligation at some point, and I think that Mr. Babcock did raise that by a 28-J letter. However, it's interesting. When you read 28-J, it says that you have to cite to the section of your brief or the section in oral argument that this refers to. And of course, it's not in his brief. Well, ordinarily that would be a helpful argument, but Davenport was a plain error case itself. Yes, it was. It was. So it doesn't seem to me that that helps you if all we're reviewing for is plain error, because that's what Davenport was as well. So I'm not sure where it gets you. Yeah. I don't think that it does. I think this case does have to be remanded. This Court has, in several different opinions that I've read recently, handled the remand a little bit differently. Davenport, it was remanded with instructions for the Court to dismiss. And in that case, the government moved to dismiss the possession count. He was resentenced on the receipt count. There was a case of mine that was cited just several weeks ago, U.S. v. Drost. And in that case, the panel remanded with instructions to dismiss the possession count, rather than giving the Court an option. And so there's a little bit of difference. There was an opinion issued the same day by the same group. Because it's the lesser, supposedly lesser included offense. Exactly. Because it's the lesser included. There was another decision the same day, U.S. v. Threadgill, in which the remand was a little bit different, and that same issue was in there. And so I think it's the same. What's the standard that we would have to apply if we were to pursue that? Is it lenity? Is it what? Well, Your Honor, I think the count one, obviously, was pled to. It was sentenced. And Mr. Babcock is correct that there's a significant difference between the possession and the receipt chart. Receipt carries 5 to 20. Possession is up to 10. And even the advisory guideline calculation is different for a possession count than it is for a receipt count. Under the possession count, you started a base offense of 18 rather than at 22. So it makes somewhat of a difference in terms of what the advisory guideline range would be. In this case, there was no objection to the advisory guideline range, and it was properly calculated. However, if this court chooses to remand and doesn't give the district court discretion on which count to dismiss, then there'll be a whole new guideline calculation if, in fact, you dismiss the receipt rather than the possession. So it makes a significant difference either way. And the government is recommending what? The government is recommending remand with discretion of the district court to decide. Well, it sounds like you agree. I think that we do. In a lot of ways, we do agree that the case has to be remanded. Certainly, there's the reasonableness argument, but that can also be. Counsel, what would we do? What's the government's position in a case in which if Mr. Babcock had not filed a 28-J letter? Well, I think he waives that. I think he waives that argument. It's not up to this court to. Even if we saw the error. Well, it's not up to this court to make the defendant's case for him. So all we're doing is making 2255 cases for ourself. That's the unfortunate result. I mean, and Davenport does have to be dealt with in any or all of these cases. And obviously, these predate the Davenport decision. And so now we're obviously handling them different. So hopefully, you won't have a continuing flood of Davenport problem cases coming out of the district anymore. Any other questions from the panel? None here, counsel. Thank you. Thank you. Mr. Babcock, anything further? Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument next in United States v. Headings. Counsel, you may proceed. Thank you, Your Honor. May it please the court and counsel, my name is Wendy Holton. And I represent the defendant and appellant, Scott Headings, in this matter. Last week, we received an order from this court asking us to address two issues at this oral argument. The first issue is whether the Davenport issue has been raised, given that the case was decided a week before our opening brief was due. I missed it, and then finally raised it in the 28-J letter a couple of weeks ago. In the past few days, my research on this issue has indicated that this court can consider it. And I filed with the clerk this morning some supplemental authorities. It's very, very clear, especially in other circuits, that this court can raise issues sua sponte, even sua sponte, without the lack of any notice or without any notice from counsel if the error is manifest and it would result in an injustice. For example, in the Fourth Circuit, in Brickwood Contractors v. Data Debt Engineering stated, if deemed necessary to reach the correct result, an appellate court may sua sponte consider points not presented to the district court and not even raised on appeal by any party. Similarly, the Eighth Circuit, in a case called United States v. Mountain Valley Mineral Water stated, the court, moreover, in the public interest and to guard against injustice may, of its own motion, notice errors which have not been properly preserved for review if such errors are obvious or if they otherwise seriously affect the fairness and integrity of the judicial proceedings. The Tenth Circuit in a case called Counts v. Kissack said, although it is rarely done, an appellate court may sua sponte raise a dispositive issue of law when the proper resolution is beyond doubt and the failure to address the issue would result in a miscarriage of justice. This court has, likewise, considered issues not raised in the opening brief. And as, I mean, clearly the general rule is that things have to be raised in the opening brief or they are waived. However, especially in the cases where a co-defendant has raised an issue and a defendant has not, this court has felt that there should not be a disparity among the co-defendants. That was the case in a case called United States v. Gosho Kim, which again is on my list of supplemental authorities. There the defendant, the question there was whether a person could be convicted with a non-unanimous verdict. And the co-defendant raised that issue. The appellant, Gosho Kim, did not raise it until his reply brief. And in determining that the court would hear the issue, it stated, we will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief. Three main exceptions to that rule exist. First, we will review an issue not present in an opening brief for good cause shown, or if failure to do so would result in a manifest injustice. Second, we have discretion to review an issue not raised by appellant when it is raised in an appellee's brief. And third, we may review an issue if the failure to raise the issue properly did not prejudice the opposing party. The court in Gosho Kim reached the issue and it gave three reasons for doing so, which I would assert are all present here in some fashion. First, as here, the issue was considered to be plain error. The non-unanimous verdict, like the multiplicitous conviction in Davenport, had been held to be plain error. And reversal was necessary to prevent a miscarriage of justice. Therefore, consideration was required even though it was not properly raised. Second, it was manifestly unjust to reverse the conviction of one defendant, but to uphold the conviction of another if the error affected both defendants. And in this case, I will, of course, have to concede that Scott Headings does not have a co-defendant. But he is exactly similarly situated to every defendant in this circuit who has either pled or been found guilty of both possession and receipt. I mean, that is an issue that is very familiar to the United States attorneys, especially the ones in the Billings office. Let me ask you another question here. What, if you were here for the previous argument, what is your request for relief? Do you want the district court to have discretion to decide which of the convictions to vacate, or would we just simply vacate the lesser included of the two? My, that's actually something I have been thinking about and haven't found. All of the cases have just sent it back saying, send it back with directions to reverse one of the convictions. It's not been specified. Well, some of them, it has been specified that the lesser included shall be vacated. And I have tried, you know, I've tried to think of a reason why I should be able to go back and ask for just the possession charge as opposed to the receipt charge. And I haven't thought of, that hasn't, it hasn't become clear to me that I could do that. Now, the other, normally we don't look, if we do that, we normally don't look at the sentencing questions because the sentence could be different. And here, though, the big issue, in my view, is the question of the internet ban for lifetime, which is a condition of supervised release. And so it seems somewhat likely that that would resurface, no matter how the incarceration term might be changed up or down. I guess not up, but down, or not at all. Is this a situation in which it's so likely that that specific issue will come back that we should decide that now or not? I think you certainly have the power to. And I would, again, refer to my supplemental authorities on that. There is a Fifth Circuit case called United States versus Medellin Torres. It's an unreported opinion. But again, it's a remand on a multiplicity issue. It was, I think, a felon in possession of a firearm and also an illegal alien in possession of a firearm. And there the court said, because we have remanded for resentencing and it is likely that this issue will call, will recur, we will address the claim at this time. Similarly, earlier this year in one of your cases, United States versus Curley, there was a multiplicity issue on a child support, whether a person can be convicted of multiple counts of failure to pay child support for multiple children. In that case, it's a little bit different because the issues that were addressed, that the court addressed prior to the remand dealt with sentencing guideline issues, the vulnerable victim enhancement, and the restitution amount. So those are legal issues, whereas conditions of supervised release are more in the discretion of the district court judge. In this case, however, it seems to me that, that the, that it is pretty clear based on the research that I did on that issue that a lifetime ban with absolutely no potential for access to the internet, even under the supervision of a probation officer, is probably excessive. That it would have to be a really extraordinary case to justify that. In fact, I couldn't find a single case in the entire country where that had been upheld. So I think that the, that is a pretty clear issue that I think you clearly have the power to address at this time. And so the question becomes is, since that issue was, all of the issues were not objected to below, is, you clearly have the power to, but is the question whether you want to give the district court judge the opportunity to consider that with the objection and with the case law before you do. And I think that that's a matter of your discretion. Roberts. Counsel, I gather you did not pursue this question of whether notice was required pre-sentence with respect to the lifetime ban. Your Honor, there was in, and I put note at it in my brief, that the probation office did say something about, they gave three different things that could be done regarding access to computers. And one of them said prohibit. It, and as I was rereading the sentencing memorandum in this case last evening, I did note that the, the trial counsel had actually mentioned that. It was never addressed at the sentencing hearing in any manner. So, and the judge just did it. And nobody addressed it. So, I think that technically there might have been some notice there. There wasn't on the camera restriction at all. Thank you, counsel. Thank you. We'll hear from the government. Thank you, Your Honor. Mark Smith, Assistant U.S. Attorney on behalf of the government. As my colleague noted, there were three issues that were highlighted by this panel. In the order that was issued last week, the first of those, which has already been discussed several times this morning, was waiver. And I think we have to address waiver as a preliminary issue before we can get to any other issues. However, in contrast to my colleague, I do not believe that waiver is a problem. My research indicates that there are two kinds of waiver. You, you can waive the right to raise an argument, or you can waive an argument by failing to make it. Both of those are present in this case. Double jeopardy, or any error of a constitutional nature, can be waived by a knowing, voluntary, and intelligent guilty plea. I would refer the court to United States versus Burroughs, 488 U.S. 563. We have that kind of a guilty plea here. Mr. Headings pleaded guilty to both receiving and possessing child pornography. In Burroughs, the Supreme Court found a waiver of the double jeopardy argument where the facts that were admitted in the district court were inconsistent with a later claim that the charges were multiplicitous. Here, the sentencing transcript very clearly delves into the issue of defendant's specific conduct and how that conduct correlated to the charges against him. Specifically, the colloquy between the district court and defense counsel went as follows. And I'm quoting here from the sentencing transcript. The defendant's counsel said, these charges necessarily involve the possession of child pornography and nothing else. The district court said, hold up. Now that's not accurate, counsel, and you've stated that more than once. This man has pleaded guilty to three separate charges, not possession of child pornography only, but to receipt of child pornography and to an attempt to destroy evidence. So it misstates the record to say this man has pleaded guilty only to possession of child pornography, and I cannot allow you to do that, counsel. It's simply not accurate. The defense counsel went on to acknowledge that, in fact, his client had pled guilty to all of these charges. But he objected that, and I'm quoting again, this in and of itself is a victimless crime. Well, the district court took strong exception to that argument, and he discussed some of the photos that he'd looked at. And he talked about the tens of thousands of images that he'd been forced to review. And he said, the reality is, by any reasoned assessment of the facts, each and every one of these children whose photograph, or worse, movie has been placed in the Internet sphere of availability, makes each and every one of those youngsters a victim each and every time his or her picture or image is displayed on any computer screen anywhere in the world. So this is what Mr. Heading pleaded guilty to. By its explicit terms, the proceedings below create a distinction between the initial receipt of pornography and every subsequent display of that pornography. That creates a distinction between receipt and possession. Under Brose, that is incompatible with the argument that Mr. Heading is presently advancing, that those two crimes are double jeopardy. Did he plead guilty to receipt and possession of different images? In other words, if you received image A, and you plead guilty to receiving image A, but you plead guilty to possessing image L, then there's no double jeopardy because they're two separate things. Is that what happened, or you just- I think what he pleaded guilty to, what the transcript makes clear is that he pleaded guilty to receiving- Well, you didn't read anything about what he said. You had a lot of things about what lawyers and judges said. But was the actual guilty plea, or I'm trying to understand your argument. Are you arguing that there were distinct images involved in the receipt and possession accounts? I don't think that that was brought out in the change of plea hearing, Your Honor. I think that the argument that the district court was making, and I think that was implicit in the proceedings below, was more temporally oriented. And this actually is manifested, too, in a line of double jeopardy cases concerning possession of heroin. Does the indictment tell us anything about that? No, the indictment does not specify- I think that's exactly what the Davenport majority rejected, was what the district court was saying. If it's concerning the same image, as you know, I think it makes sense, but that's not the law of the circuit. And so that's why I'm asking the question I'm asking, because there are obviously many images, and when someone pleads guilty, it's quite possible to structure a plea, I would think, so that you've got receipt over here and possession over here of different things. Right. But I don't see that here. Well, and again, I've wrangled with Davenport and its progeny, myself, over the last several days since this order came out. I'm not sure that the circuit was cognizant of the Supreme Court's authority in Gross, and the whole idea that facts that are events in the proceedings below can be seen as a waiver of the double jeopardy argument. But the circuit doesn't need to rely on that, because we've also got another kind of waiver here, which is the fact that this particular defendant failed to raise this argument in his opening brief. Well, I'll ask you the same question I asked in the previous case, though, which is given that Davenport itself is a plain error case, where it wasn't really developed, at least it wasn't developed in the district court. Where does that leave us, other than being back here on a 2255? Well, I guess I would draw a distinction from the previous case in that it was actually argued in the appellate- In the brief. In the brief. Here, it was not. It was never argued. There's a whole line of authority from the Ninth Circuit, and I would refer the court to Hale v. U.S. Trustee, U.S. v. Ann Kenney, and U.S. v. Comma, which says that an issue is waived when the appellant does not specifically and distinctly argue- Our cases counsel have drawn a distinction. The term waiver is not the correct term there. The term is forfeiture. Forfeiture. They forfeited the argument, but they haven't waived it. Waiving, a waiver is a knowing, it's a knowing agreement to forgo your rights. A forfeiture may be inadvertent. I did note that distinction in some of the cases, and I'm sorry for failing to make proper note of it here. The defendant definitely forfeited the argument by failing to make it in the opening brief, and according to the authority of the court, and I would refer you here to Pollack v. Wood, this is not a problem that can be fixed with a 28J letter, especially- But doesn't that go to Judge Graber's question in Davenport, where we were dealing with a plain error? If we have simply forfeited the argument here by not recognizing it, then can't this court correct it as a plain error? And why wouldn't we? I mean, I'll add to that. As a practical matter, why wouldn't we just deal with it and move on? Well, as a practical matter, when you file a 28J letter a week before argument, it places the United States at a great disadvantage in terms of preparing for an argument. It's an 11th hour- It does, but you can come back and do the habeas matter later on. We can save you some time. We may be able to save you some time right here, and we may be able to save ourselves some time, and we're just wondering whether the government is willing to save itself and us some time by simply addressing it now while we recognize the problem, rather than forcing everybody to go through it on habeas. Well, I think the end result here is probably going to be the same. In other words, my argument is that waiver applies. Therefore, we can address the reasonableness issues. The reasonableness issues are going to apply under either county, whether it be receipt or possession, because the provisions of supervised release are going to apply under either county. So the end result is the same. I would submit that the procedures that exist here maybe exist because when a defendant fails to make an argument in a brief, we're just in no position to deal with it at this level. Well, that may be true as a generale, but it surely isn't true here. You've got a hassle of these cases that are all alike, and as soon as Davenport came out, your office knew that you had a hassle of cases that were all alike and that this issue was going to come up a lot of times. It isn't the sort of novelty and surprise that you might anticipate somewhere else. I guess I just don't understand why we would insist on the formality of requiring a whole new proceeding to get to the same point of vacating one of these two convictions, and you may be right that we can still address some of the reasonableness issues, although perhaps the district court would have a different view on remand. Well, Your Honor, the bottom line from the standpoint of the government, what is your request to us today? My request would be that this Court hold that the double jeopardy argument has been waived. We don't have to deal with the Davenport remand. There's no question of this Court's jurisdiction during that remand, and therefore, we can move on to the reasonableness issues. The reasonableness issues that the Court seems to be concerned with here deal with the Internet ban, and I guess I would preface the discussion. You're running out of time, so just give us the essence of it. I'll try and move as quickly as possible here. The standard of review here is plain error. If you look at the constellation of cases out there dealing with conditions of supervised release, and especially the ones dealing with Internet ban, they're all premised on prejudicial error, which we don't have here. It's a fundamentally different error. You need a fundamentally different standard of review. You need to have error that's plain, that substantially prejudiced the rights of people. Counsel, this guy's going to be out in 20 years. It's very difficult for me to even remember what happened 20 years ago on my computer, much less envision what's going to happen 20 years from now. This ban appears to be beyond anything that we or any other court has ever approved. There's no sort of safety valve, no, you know, probation officer sort of looking over his shoulder, allowing usage. Why isn't this just a bit of overreaching here? Well, the problem here, Your Honor, is that we have to apply the plain error standard at that 20-year vantage point. In other words, this defendant is going to be in prison for the next 20 years. And so you have to ask yourselves, well, is it going to be plainly erroneous to apply this kind of a ban, given what the reality is in 20 years from now? Is Mr. Heading's going to receive training while he's in prison that's going to completely obviate his training and experience in the computer field to date? All of these things are imponderable. All of these things are unknowable by this court at this time. All of these things are going to happen at such a far remove that- Why not put a safety valve in there so that we can be a little more flexible? There is a safety valve in there. And the safety valve is Federal Rule of Criminal Procedure 32. And you'll note in footnote three of my brief, I cite the court to McKissick. McKissick basically says that the defendant who is contesting a condition of supervised release, in that case it was a lifetime ban on alcohol consumption, is not subjected to plain error because he always has recourse through Federal Rule of Criminal Procedure 32 to go back to the district court and say, look, you should modify this condition. If Mr. Heading's received treatment in prison that allows him to be a judge, no longer a threat, then he can go to the district court and say, look, an internet ban is no longer appropriate for me. This is not even a condition that's going to go into effect for another 20 years. So you're going to have plenty of opportunity. Thank you very much, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bybee